## UNITED STATES *v.* BOUCHSEIN (No. 582).[1]

SCHAPPE SILK YARNS, CONDITIONED.

The testimony shows such a general trade adoption of and acquiescence in the conditioning rule for finding the number to be assigned schappe silk yarns according to the metric system, that the reference to this system in paragraph 397, tariff act of 1909, may be fairly held to indicate this conditioning rule as a proper guide. This conditioning rule having been complied with in the case here, there is no error in the appraisement.

### United States Court of Customs Appeals, October 12, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7147 (T. D. 31181).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

*Nathaniel Levy* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellee imported into this country a consignment of schappe silk yarn. It is conceded that the merchandise was dutiable under paragraph 397 of that act.

The pertinent parts of the paragraph read as follows:

397. Spun silk or schappe silk yarn * * * if valued at exceeding one dollar per pound, in the gray, in skeins * * * if advanced beyond the condition of singles by grouping or twisting two or more yarns together, on all numbers up to and including number two hundred and five, fifty cents per pound, and in addition thereto ten one-hundredths of one cent per number per pound; exceeding number two hundred and five, fifty cents per pound, and in addition thereto fifteen one-hundredths of one cent per number per pound * * *. In assessing duty on all spun silk or schappe silk yarn, the number indicating the size of the yarn shall be taken according to the metric or French system, and shall, in all cases, refer to the size of the singles. * * *

The yarn in question is valued at over $1 a pound, is a two-ply yarn, in the gray, and in skeins.

As appears above, the rate of duty upon such an importation depends upon the number indicating the size of the yarn of which it is composed, and this number is to be taken according to the metric or French system and is to refer to the size of the singles.

---

[1] Reported in T. D. 31954 (21 Treas. Dec., 402).

The yarn in question was described in the invoice as number 200 two ply, which was the number certified by the spinner. But after an examination and report by the appraiser, the collector classified the same as number 210 two ply, and assessed duty upon it accordingly.

The appellee protested against the ruling of the collector and contended that the yarn should be classified as No. 200 two ply, as invoiced. This protest was duly heard upon evidence by the Board of General Appraisers, and the protest was sustained. A rehearing was had upon the application of the Government, with additional evidence, and again the protest was sustained. The Government now prays for a reversal of that decision of the board.

As is above indicated, the contention between the parties relates entirely to the number which should be given the imported yarn according to the metric or French system, as prescribed by the paragraph.

The testimony shows that the method of finding the number of such yarn according to that system is as follows: A measured length of single yarn is reeled off and weighed, and this weight in grams is divided into the length in meters of the piece so weighed; the quotient thus obtained is the number sought. As appears from this statement, the greater the weight of the given piece the less will be the number and the lower the rate of duty under the provisions of the paragraph.

As has been stated, the duty upon such yarn is not assessed according to its weight alone, but also according to its number. This number, however, as has been explained, depends in part upon the weight of the piece of yarn which is selected as the sample for the computation. And the parties reach their point of difference in this case in coming to determine the method of ascertaining the weight of the selected measure of yarn.

The Government contends that the collector in taking the weight of this piece shall find its actual present weight in the condition of moisture in which it may happen to be when the calculation is made. The importer contends that the piece so weighed must first be "conditioned," and that its weight as taken by the conditioning process shall be accepted for the purpose of the calculation. The conditioning process is hereinafter explained. This defines the real issue between the parties in the case, namely, the different methods of ascertaining the weight of the given measure of yarn for the purpose of using it as a factor in the computation required by the metric system.

The testimony shows that the silk yarn in question naturally absorbs considerable moisture from the atmosphere, and the amount so absorbed changes, of course, according to the changing humidity of its surroundings. If the yarn is kept in a dry place it will lose

moisture and weigh less, and if changed to a wet place it will absorb moisture and become heavier. It is said to be the custom to leave it for several days in cellars just before shipping it to this country, so that it may absorb moisture. This reduces the fuzz and makes the yarn smoother and sightlier. At the time of exportation it sometimes carries as much as 13 or 14 per cent of its gross weight in moisture. When fully dried out, it carries a much less percentage of moisture.

In the manufacture of schappe yarn, the spinner sets the draft of his machine so as to turn out a given size of yarn, and a certificate as to the number goes with the invoice of the goods. But such a certificate is often only approximately correct, and may not be accepted by all of the parties dealing with the merchandise. Thereupon the parties may be compelled to ascertain the correct size of the yarn by the metric system, and in order to do so they must first ascertain the weight of a given piece of the yarn as above explained. It is easy to see that in the case of yarn which may absorb 13 or 14 per cent or more of its own weight in moisture in wet surroundings, or retain less than half that much in dry surroundings, an element of considerable uncertainty is thereby introduced into such a calculation.

The testimony shows that this uncertainty was recognized many years ago by the silk trade as a disturbing factor entering into the sale and delivery of such yarns, and efforts were made to correct it. At first the yarn was weighed by hanging it in a room where the temperature and moisture were kept as nearly even as possible. But finally, it is said, the process of "conditioning" the yarn was adopted, first in Turin and afterwards in other places also. By this process a selected piece of the yarn is placed in an oven until all the moisture is expelled from it, then the weight of the dry piece is taken, and to this weight 11 per cent thereof is added as an allowance for normal moisture. The figure thus found is used as the divisor in the calculation above described. At first this fixed allowance was 10 per cent of the dry weight, but afterwards it was advanced to 11 per cent. The witnesses in the case sometimes speak of this allowance as an arbitrary one, but the word is incorrectly used by them in that application, for the figure was not arbitrarily selected, but was the result of general observation and experience and was accepted as a normal element in such a calculation; that is, long-continued observation convinced the trade that 11 per cent was the average percentage of moisture in schappe yarn under ordinary circumstances. And thereupon the trade, not universally but generally, adopted the rule that the yarn should be so conditioned for the purpose of calculating the number or size of the yarn in cases wherein the spinner's certificate was not accepted as final authority. The testimony shows that this rule was approved at a conference of the various silk associations held in Paris

in 1900 and that this approval was received by the trade in general as an authority upon the subject. It is a fair conclusion from the testimony that after that time, if not before, this rule became in a general sense an implied term in contracts for the sale and delivery of schappe yarns unless negatived by some express or implied stipulation in the contract to the contrary. Many conditioning houses were established in Europe, although individual manufacturers often did their own conditioning by means of their own apparatus. Such houses dealt also with other silk products in addition to yarn, and much that has been said above would equally apply to such other products. It appears that at the time of the hearing before the board there was but one such establishment in New York, and that was the United States Silk Conditioning Co., a corporation doing business under the auspices of the Silk Association of America.

The testimony shows that some of the largest dealers in silk goods in Europe refuse to submit their differences to the arbitrament of conditioning houses and demand that their customers accept their certificates as final. But, on the other hand, it appears by a very clear and convincing preponderance of the testimony that the conditioning rule has been generally adopted by the trade, and that it has been so adopted because it was believed to be reasonable, stable, and necessary, and equitable between dealers in such yarns. Where in the assessment of tariff rates the duty depends upon the weight of an article it is the rule that such weight is to be found by taking the article in its condition at importation. Paragraph 404 of the act of 1909 especially applies this rule to silk. But where, as in this case, the purpose of weighing is only to ascertain by calculation the number indicating the size of yarn, and a selected piece of yarn is weighed for the purpose of such a calculation, a different problem presents itself. The weight of the yarn changes with different percentages of moisture in it, but the numbers indicating the size ought not to change according to such percentage of moisture.

The testimony shows such a general trade adoption of and acquiescence in the conditioning rule for finding the number according to the metric system that the reference to this system in paragraph 397 may fairly be held to have had the rule in contemplation.

The yarn in question was conditioned by the United States Silk Conditioning Co., above named, at the instance of the importer, and according to its finding and report the spinner's certificate was sustained and the yarn found to be No. 200 two-ply yarn. There seems to be no dispute about the correctness of this finding upon the basis of the conditioning rule; it is only the rule itself which is disputed by the Government.

In this view of the case, the decision of the board should be *affirmed*.