UNITED STATES *v.* INTERNATIONAL CLEARANCE CO. (No. 2440).[1]

WEIGHT OF "SHRUNKEN" CATTLE.

Cattle in Canada were deprived of food and water in order to reduce their weight at the time they were imported into the United States. They were then weighed by the Canadian Government and were invoiced at these weights. Duty was assessed on their weight at the time of sale in the United States. Such weight is shown to be greater than at the time they crossed the border. It was the duty of the Government to ascertain the weight of the cattle at the time they crossed the border. The invoice weights were prima facie correct, and duty should have been assessed on them.

United States Court of Customs Appeals, December 17, 1924

APPEAL from Board of United States General Appraisers, G. A. 8802 (T. D. 40198)

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*John A. Kemp,* special attorney, of counsel), for the United States.
*Milton P. Firestone* for appellee.

[Oral argument Nov. 12, 1924, by Mr. Kemp and Mr. Firestone]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the Board of General Appraisers sustaining the protest of the importer to the collector's assessment of duty on certain importations of cattle from Canada.

[1] T. D. 40592.

The cattle were shipped from Winnipeg, Canada, to South St. Paul, Minn. Some shipments crossed the border at Pembina, N. Dak., and the other shipments at Noyes, Minn., at which ports consumption entries were made.

It appears from the record that the cattle were purchased at various places in Canada and brought to the stockyards at Winnipeg. After they reached the stockyards they were subjected to a shrinking process—that is, they were given but little food and water, the purpose of which was to substantially reduce them in weight. They were subjected to this process for a period of from 12 to 36 hours, and in some instances for a longer period.

Shipments to the United States were made twice each week, on Tuesday and Friday, on account of the fact that the weigher representing the Canadian Government was on duty at the stockyards on those days.

Sometime during the day on which the cattle were loaded and shipped, and while in a "shrunken" condition, they were weighed by the agent of the Canadian Government, and thereafter and during the interval of time remaining before being loaded on the railroad cars they were well fed and watered.

The cattle were invoiced at the weights ascertained by the Canadian weigher.

The Government officials charged with such duty did not weigh the cattle at Pembina or at Noyes.

Cattle trains run from Winnipeg to South St. Paul in about 30 hours, and from Winnipeg to the customs line in about 6 to 8 hours.

When the cattle arrived in South St. Paul, they were unloaded and provided with plenty of food and water until such time as they were sold. At the time of sale, which occurred from 24 to 36 hours after they arrived in South St. Paul, the cattle were weighed, and the weights taken at this time were the weights accepted by the Government and upon which duties were assessed by the collector.

It was the duty of the customs officials to ascertain the weight of the cattle at the time they crossed the customs line. Facilities for weighing such importations were provided at the ports of entry.

It was the duty of the collector to assess duty on the weight of the cattle at the time they crossed the customs line, and not at some later time, when their condition had so changed as to make the question of weight at the time of importation one of mere speculation.

The cattle were "shrunken" purposely at Winnipeg, Canada, before they were weighed at that place, so as to reduce the weight of the cattle and thereby lessen the amount of duty to be paid thereon. They may or may not have weighed more at the time they reached the United States than the weights given in the invoice, but certainly, according to the overwhelming weight of the evidence, they weighed

considerably more at the time they were sold in South St. Paul than they did when they crossed the customs line.

The Government having failed to ascertain the correct weights of the importations at the time they reached the ports of entry and the importer having established by proper evidence that the weights accepted by the Government and upon which the collector determined the dutiable value of the importations were incorrect, and there being no other weights upon which the duties may be determined, and the invoice weights appearing to be substantially correct, they must be accepted as the basis upon which proper duties may be ascertained.

The judgment of the Board of General Appraisers is *affirmed*.