(C. D. 1834)

R. J. Saunders & Co., Inc. v. United States

United States Customs Court, Third Division

(Decided December 20, 1956)

*Jordan & Klingaman (Jacob L. Klingaman* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General *(William J. Vitale,* trial attorney), for the defendant.

Before Johnson and Donlon, Judges

Johnson, Judge: These are protests against the collector's assessment of duty on viscose rayon staple fiber at 15 per centum ad valorem under paragraph 1302 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739. In the original protests, it is claimed that an allowance should have been made for excessive moisture, but this contention was not pressed at the trial. In amendments to the protests, it is claimed—

* * * that the collector of customs in ascertaining the amount of duty due, should have multiplied the appraised unit of value by the number of units contained in each importation of the kind specified by the appraiser in his appraisement, namely, conditioned or recalculated weight.

At the trial, there was received in evidence a deposition, obtained in Sweden, of Folke Elander, sales director of Svenska Rayon AB, Alvenas, Valberg, Sweden, producer of this merchandise. He stated that the moisture of every bale was checked just before baling and that weighing took place immediately after baling and formed the basis for establishing weight and moisture regain. He explained:

According to the International Bureau for the Standardization of Man-Made Fibers all rayon staple fiber is subject to a recalculated commercial weight

which in the case of the United States is determined at 11%. The commercial weight is obtained by adding to the oven-dry weight of the de-oiled material a weight corresponding to the conventional allowance. * * *

He presented a booklet, issued by the International Bureau, and a card giving the formula for the calculation of the commercial weight for rayon staple fiber. The latter shows the conversion coefficients to be used with various moisture percentages in order to obtain the weight with 11 per centum moisture.

According to the witness, all the merchandise was invoiced at a unit price for a unit of recalculated weight, and the number of units on the recalculated weight basis was correctly set forth on all the invoices.

David F. Fineman, called as a witness for the plaintiff, testified that he has been examining rayon staple fiber in his official capacity as United States customs examiner since 1945 and that the appraisements herein were in various amounts in Swedish kronor at the entered prices per conditioned or recalculated kilo, net packed. It was noted that three different types of rubber stamps had been used on the invoices explaining the appraisements, but the witness stated that they were all intended to convey the same meaning. He said that the unit of merchandise for which he reported a value was a kilo on the basis of a recalculated or conditioned weight and that a conditioned kilo or pound is a bone-dry weight for the commodity, plus 11 per centum of moisture regain.

John F. Doyle, chief liquidator in the New York collector's office, testified that he was familiar with the method of liquidating entries of rayon staple fiber, which he explained as follows: When a liquidator receives such an entry for liquidation, he has before him the appraised value at a certain number of Swedish kronor per conditioned or recalculated kilo, net packed; a net landed weight; and an invoice net weight. He has no landed conditioned weight, because it would be impractical to sample every bale, bone-dry it, and add back 11 per centum for moisture. The liquidator, therefore, divides the landed net weight by the invoice net weight to find the percentage of increase or decrease over the amount shipped. He uses this factor against the total conditioned kilos on the invoice. He arrives at an adjusted recalculated or reconditioned weight which he multiplies by the appraised unit value in Swedish kronor and then converts into United States dollars.

The witness was shown the papers in entry No. 867665 and stated that the first column on the invoice showed the bale number, the second the gross weight, the third the tare, and the fourth the net weight in kilos. Additional columns are headed "Moisture %"; "Conversion coefficient"; and "Recalculated base %=invoice weight."

The witness was also shown the weigher's return in entry No. 851073, on which the following formula appears in pencil:

$$\frac{210483}{199618} \times 72022 + 397 \text{ Pkg} = 76344$$

He explained that 210483 represented the weigher's return of net weight; that 199618 represented the invoice net weight; and that 72022 was the entered value, less the packing. He said that the formula was a shortcut adopted by liquidators and that, in this case, the packing was deducted by mistake. Under this system, the duty varies in direct proportion to the variance between the landed weight reported by the weigher and the invoice net weight.

On cross-examination, the witness stated that an adjusted total conditioned or recalculated weight was used rather than the conditioned or recalculated weight. He said it would be impossible to sample every bale, bone-dry it in a laboratory, and then add back 11 per centum, and use of the two net weights gives the fluctuation between the shipped net weight and the landed net weight.

Robert L. Brightman, vice president of Johaneson, Wales & Sparre, Inc., importer of the within merchandise, testified that he has been selling rayon staple fiber for 5 or 6 years and is familiar with the practices as to the unit of sale. He said that, in quoting the price, selling, and delivering such merchandise, the price is expressed per pound of rayon staple fiber, calculated on the basis of the bone-dry weight, plus 11 per centum moisture regain. He stated, further, that the instant merchandise was sold here on the basis of the recalculated weights appearing on the invoices; that the merchandise was not actually weighed before delivery, because each bale has a specific value, regardless of how much it weighs. It would not be impractical to ascertain the weights here, but it would cost money.

On this record, it is claimed that, in finding the total appraised value, the collector should have multiplied the unit appraised value by the number of units of such value in each shipment. According to section 500 (a) (1) of the Tariff Act of 1930, it is the duty of the appraiser to appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold. In the instant case, the appraiser appraised the merchandise at varied amounts in Swedish kronor per conditioned kilo, which was the unit of quantity in which the merchandise was bought and sold. It was the duty of the collector to ascertain the gross entered value by multiplying the unit appraised value by the true number of such units in each shipment. *United States* v. *Woodward-Newhouse Co.*, 11 Ct. Cust. Appls. 284, T. D. 39100. He had no authority to use any unit of quantity other than that used by the appraiser. *Balfour, Guthrie & Co.* v. *United States*, 12 Ct. Cust. Appls. 376, T. D. 40541.

Since the unit of appraised value herein was the conditioned kilo, the collector should have found the total number of conditioned kilos in each shipment and multiplied that by the appraised unit value. According to the liquidator's testimony, it was impractical to ascertain the total number of conditioned kilos landed, so an adjusted total conditioned weight was used. The landed net weight was divided by the invoice net weight and this factor multiplied by the invoice conditioned weight. While this method takes into account the fluctuation between the shipped net weight and the landed net weight, we do not see that such fluctuation has any relation to the landed conditioned weight. It is evident that this type of merchandise changes in weight in accordance with the moisture content of the atmosphere, for which reason it is bought and sold on the basis of its bone-dry weight, plus 11 per centum. Assuming that the conditioned weight was properly calculated by the shipper at the time of exportation, such weight would be the same at the time of importation. Any greater or less amount of moisture found in the merchandise in its landed condition would not change the true conditioned weight.

There is no evidence in the instant case impugning the invoice weights, which include gross, net, and conditioned weights. There is evidence that the moisture of each bale was checked, the weight found, and the conditioned weight calculated at the time of shipment. In the absence of a finding of landed conditioned weights, the collector should have used the invoice conditioned weights, instead of the so-called adjusted conditioned weights, which do not represent the landed conditioned weights.

While it is often stated that merchandise is dutiable according to its landed net weight, rather than its invoice net weight, it is obvious that this principle is not applicable here, where the weight varies in accordance with atmospheric conditions and the merchandise has been appraised in a unit of quantity which can be found only by drying the merchandise and adding a conventional percentage for moisture. The landed net weight does not represent the weight upon which duty must be taken at the unit appraised value.

In *United States* v. *Bouchsein*, 2 Ct. Cust. Appls. 227, T. D. 31954, the number of the size of schappe silk yarn was involved. This number was obtained by dividing the length in meters of a piece of yarn by its weight in grams. However, since the weight varied with atmospheric conditions, a conditioned weight was found by drying the piece and adding to the dry weight 11 per centum for moisture. The Government contended that the weight to be used should be the actual weight in the condition of moisture in which the piece happened to be when the calculation was made. The court held, however, that

although the weight of the yarn changed with different percentages of moisture, the numbers indicating its size ought not to change according to such percentage of moisture. In the instant case, likewise, the dutiable weight should not vary in accordance with the percentage of moisture in the merchandise when it happens to be weighed, since it was appraised in a conditioned weight, which does not vary.

In *Gerhard & Hey Co., Inc.* v. *United States*, 73 Treas. Dec. 760, T. D. 49541, relied upon by the Government, the appraiser adopted the unit invoice price (based upon "conditionweight") and applied it to the net weight of the merchandise found at the time of importation. The court, in its opinion, stated that the unit of quantity of the merchandise was the pound; that the price was the price per pound; that the total weight in pounds constituted the dutiable weight. It, therefore, held that the collector did not proceed contrary to law in using the net landed weight in determining the amount of duty.

It is to be noted that this case involved the same state of facts as appeared in *Gerhard & Hey Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 655, T. D. 47634, where our court of appeals found that the appraiser determined the dutiable value to be the "conditioned weight" price applied to the net weight pounds.

In the instant case, the unit of quantity used by the appraiser is not the pound or the kilo, but the conditioned kilo, and the price is the price per conditioned kilo. There is nothing to indicate that the appraiser intended that the price per conditioned kilo should be applied to the number of landed kilos, regardless of condition. In our view, the total dutiable weight is the total number of conditioned kilos in each shipment.

For the reasons stated, we hold that, in determining the total dutiable values herein, the collector should have multiplied the unit appraised value per conditioned kilo by the number of conditioned kilos in each shipment. Customs officials did not ascertain the landed conditioned weights, but the invoice conditioned weights appear to be correct, and there is nothing to show that they would differ from the landed conditioned weights had such been obtained. Therefore, the invoice conditioned weights are the weights upon the basis of which duty should be calculated. *United States* v. *International Clearance Co.*, 12 Ct. Cust. Appls. 430, T. D. 40592.

To that extent, the protests are sustained and judgment will be rendered directing the collector to reliquidate the entries, assessing duty upon the basis of the unit appraised value per conditioned kilo, multiplied by the total number of conditioned kilos, as set forth on the respective invoices herein. As to all other claims, the protests are overruled.