**MAIDEN LANE TRADING CORPORATION**
v.
**UNITED STATES.**

**C.D. 4357; Protests 66/4553–2480, 66/44471–2502, and 67/45967–2549, against the decisions of the collector and district director of customs at the port of Norfolk.**

**[Judgment for defendant.]**

United States Customs Court,
Third Division.
June 7, 1972.

---

5. See, 28 U.S.C. § 2632(c).

Barnes, Richardson & Colburn, New York City (E. Thomas Honey, Irving Levine and Joseph Schwartz, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Acting Asst. Atty. Gen. (Herbert P. Larsen, New York City, trial attorney), for defendant.

RICHARDSON, Judge:

The merchandise of these protests, consolidated for trial, consists of grey cotton print cloth imported at Norfolk, Va., from Yugoslavia between December, 1964, and November, 1965, and classified in liquidation under TSUS items 320.30 and 320.31 at the duty rates of 9 cents per pound and 9.3 cents per pound, respectively. Plaintiff-importer does not challenge the classification or the rates of duty assessed, but contends that the specific rates of duty should have been applied against a lower weight than that used by the collector or district director, as the case may be, in liquidation.

The weights used in liquidation were the invoiced and entered weights; and plaintiff contends that the laboratory determined weights used in the ascertainment of yarn numbers of merchandise identical to that at bar should have been used, together with the entered yardage figures, in the assessment of duties against the merchandise at bar upon the authority of the decision of this court in Maiden Lane Trading Corp. v. United States, 62 Cust.Ct. 277, C.D. 3744 (1969), the record in which case was incorporated into the instant record. The Government contends that the facts in the instant case differ from those in C.D. 3744, and that, even if the facts in the two cases were the same, the laboratory weights would not necessarily reflect the correct total net weight of the merchandise at bar due to shrinkage and stretching of the yarn samples, random error in multiplication factors used in the computation, and the greater degree of inaccuracy of instruments employed to measure linear yardage of cloth over scales employed to weigh such cloth.

In C.D. 3744, also involving grey cotton print cloth imported at the same port of entry by the plaintiff herein, the collector advanced the duty rate on the basis of a customs laboratory report on a sample of the imported merchandise which returned a different average yarn number than that stated on the invoice and entry papers, but assessed duty on the basis of the higher weight set forth in the invoice and entry papers, disregarding the lower weight figure returned in the laboratory report of the yarn number determination. There, as here, plaintiff contended in its protest that the laboratory determined weight should have been used in the ascertainment of the dutiable weight. And this court sustained the protest, stating (page 281):

The weight of the shipment as shown on the entry paper is greater than the weight arrived at by using the weight of the chemist's representative sample as a multiplier of the square yards in the shipment. The question is which weight should prevail in determining the duties on the merchandise. The Government contends that the presumption of correctness attaching to the findings of the collector precludes using weights other than those shown on the entry papers and on which it relied. The plaintiff

contends that finding of the exact weight under carefully controlled conditions to determine the yarn number shown on the laboratory report is the best evidence of the weight which should be used in determining the duties, and in line with Pastene & Co. v. United States, *supra*, [34 Cust.Ct. 52, C.D. 1677] rebuts the presumption of correctness attaching to the collector's action and establishes a *prima facie* case that the collector's action was incorrect. After the introduction into evidence of the laboratory report the Government did not introduce any evidence to show that the weights shown on the entry papers were more accurate than the weights shown on the laboratory report. The court agrees with the plaintiff's contention. The true weight of imported goods must be taken as a basis of duties and not those shown on the invoice or entry papers which are at variance. Downing & Co. v. United States, 11 Ct. Cust.App. 310, T.D. 39128. Also, the weight used in making calculations with respect to a given shipment of merchandise should be consistent. There should not be one weight used in determining the yarn number or classification and another weight used in determining the duties.

The *Pastene* case, cited in C.D. 3744, applies the principle that proof of an official return of weight other than that adopted by the collector rebuts the presumption of correctness attaching to the collector's determination of weight, and casts upon the Government the burden of establishing that the collector's determination was correct.

The Customs Bureau has limited the application of the decision of this court in C.D. 3744 to the entry affected thereby, stating (T.D. 69–148):

> . . . It is the Bureau's belief that the entered weight of the cloth should be used in such calculations and that the law, as set forth in the cited headnote [Schedule 3, Part 3, Subpart A, headnote 1, TSUS *], required the laboratory weight to be used only in the determination of the yarn number.

And the instant case was tried and submitted subsequent to the Bureau's determination as set forth in T.D. 69–148, dated June 19, 1969.

We find the facts in the instant case to be different from those in C.D. 3744 to the extent that the merchandise at bar was not sampled as was the case with the merchandise in C.D. 3744. However, it was brought out in the testimony given in the instant case by the customs ex-

---

* Headnote 1 of subpart A of part 3 of Schedule 3, TSUS, states:

Subpart A.—Woven Fabrics, of Cotton

*Subpart A headnotes*:

1. (a) In the ascertainment of the condition of the fabrics or yarns upon which the duties imposed upon cotton fabrics are made to depend, the entire *fabric and all parts thereof shall be* included.

(b) The term *"number"*, as applied to woven fabrics of cotton, means the average yarn number of the yarns contained therein. In computing the average yarn number, the length of the yarn is considered to be equal to the distance covered by it in the fabric in the condition *as imported, with all clipped yarn* being measured as if continuous, and with the count being taken of the total single yarns in the fabric including the single yarns in any plied yarns. The

weight shall be taken after any excessive sizing is removed by boiling or other suitable process. Any one of the following formulas can be used to determine the average yarn number for tariff purposes:

$$N = \frac{BYT}{840}, \text{ or } \frac{24T}{35Z^1}, \text{ or } \frac{2BT}{105Z}, \text{ or } \frac{3ST}{70}$$

when:

N is the average yarn number,

B is the breadth (width) of the fabric in inches,

Y is the yards (linear) of fabric per pound,

T is the total single yarns per square inch,

S is the square yards of fabric per pound,

Z is the ounces per linear yard of fabric, and

$Z^1$ is the ounces per square yard of fabric.

aminer that, consistent with the practice obtaining at the port of entry, samples were only taken from importations concerning which no previous samples had been taken and reports of sampling compiled, and that in the case of the merchandise at bar laboratory reports on previously sampled merchandise identical to that at bar were used in finding average yarn numbers which differed from those set forth in the invoice and entry papers. And the instant record also shows that the laboratory weights used in the instant case, when used as a factor together with the total entered yardage to ascertain the weight of the involved shipment, result in a lower total shipment weight than that reflected in the invoice and entry papers at bar.

In view of the limitation of the Customs Bureau on the application of the court's decision in C.D. 3744 to the merchandise involved in that case, and the testimony of the representative of the Bureau of Standards, Malcolm W. Jensen, that "In commercial measurement, weighing, without exception, can be accomplished more accurately than measuring" (R.96), which testimony was not available in C.D. 3744, the court was prompted to do research beyond the briefs of counsel. Our own research turned up cases in which the question raised in C.D. 3744 had been adjudicated although such cases were unknown to us at the time decision was rendered in C. D. 3744. In R. F. Downing & Co. et al. v. United States, 1 Treas.Dec. 124, T.D. 20556 (1899), involving dyed, glazed, and finished cotton yarn imported under the Tariff Act of 1897 and dutiable thereunder according to weight, the weight of the goods as ascertained by United States weighers in the condition in which they arrived in the United States was taken by the collector as the basis upon which duties were assessed. And the importers contended that duty should have been assessed either according to the weight and number in the grey, or according to the weight and number in the condition as imported. The Board of General Appraisers reject-

ed these contentions upon the ground that they involved two distinct and separate questions not legally or logically connected. With respect to dutiable weight the court went on to say (pages 125–126):

. . . A different rule, however, prevails as to weights. There is no satisfactory evidence to show that the phrase "per pound," used in said paragraph [¶ 302], has any peculiar commercial designation, uniformly throughout this country, different from its ordinary meaning. Hundreds of paragraphs in the tariff act contain the same words, designed to make imported merchandise dutiable specifically according to weight. It is too well settled for serious discussion that, when merchandise is made dutiable according to weight, whether by the pound, ton, or other like unit, unless otherwise expressly provided for in the particular case, the weight is to be estimated or taken at the time of the arrival of the goods in this country. The dutiable weight is generally the landed weight, as ascertained by the Government weighers, who are appointed by law and are specially invested with the statutory authority to weigh imported goods. . . .

\* \* \* \* \* \*

The exceptions to this rule are cases in which the statute authorizes an allowance for tare . . . or where deductions from weight are authorized by reason of dirt or other impurities.

. . .

The decision in T.D. 20556 was affirmed on appeal to the circuit court without opinion, and the determination of the circuit court was affirmed on appeal to the circuit court of appeals in an opinion reported *sub nom.* Downing v. United States, 109 F. 885 (C.C.A. 2, 1901). In its opinion the court of appeals stated (page 886):

. . . The mode of ascertaining the number necessarily depends upon commercial use and designation. The statute refers to the number as a designation of measure already known by

the usage, and it cannot be ascertained but by going to the usage, of which the formula is an embodiment. Not so the weight, which can be so ascertained as to carry out the words of the statute by weighing. The usage is requisite for the proper classification of the goods, but not necessary or appropriate for ascertaining their quantity. The duty is laid definitely per pound, according to the number, upon these yarns, as dyed, glazed, and finished. If the original condition was to be resorted to as well for weight as for classification, the duty would remain the same upon the advanced goods as upon the raw, and the provisions for differences would ·be meaningless, instead of effective according to their terms. The mode of ascertaining the number is complicated by the necessary resort to usage; but, when the number is ascertained, the laying of the duty by the weight is clear and unambiguous, and nothing was to be done concerning that but to ascertain the actual weight at the time of the importation. . . .

The ruling in the *Downing* case was followed by the Board of General Appraisers in R. F. Downing & Co. v. United States, 4 Treas.Dec. 782, T.D. 23283 (1901), and in Moeller & Littauer v. United States, 7 Treas.Dec. 431, T.D. 25110 [Abs. 738] (1904). In United States v. Bouchsein, 2 Ct.Cust.App. 227, T.D. 31954 (1911), involving the ascertainment of the yarn number of schappe silk yarn dutiable by weight under the 1909 Tariff Act [¶397], the Court of Customs Appeals spoke of the distinction between weight for classification purposes and weight for duty purposes in the following terms (page 230):

. . . Where in the assessment of tariff rates the duty depends upon the weight of an article it is the rule that such weight is to be found by taking the article in its condition at importation. Paragraph 404 of the act of 1909 especially applies this rule to silk. But where, as in this case, the purpose of weighing is only to ascertain by calculation the number indicating the size of yarn, and a selected piece of yarn is weighed for the purpose of such a calculation, a different problem presents itself [i.e., stability of sample weights to avoid fluctuation in number calculation].

And in Gerhard & Hey Co., Inc. v. United States, 22 CCPA 655, T.D. 47634 (1935), affirming Gerhard & Hey Co., Inc. v. United States, 65 Treas.Dec. 1482, Abs. 27804 (1934), involving rayon fiber dutiable under the 1930 Tariff Act [¶1312] in part according to weight, our appeals court recognized a distinction between dutiable weight and weight related to the value of the merchandise when the court ruled that the collector had not illegally reappraised the merchandise as claimed in the protests when he liquidated upon the basis of landed net weights under appraisements which determined the dutiable value to be the "conditioned weight" price applied, however, to the net weight pounds—the latter being the heavier of the two weights. The court stated (page 658):

. . . It must be assumed, in the absence of proof to the contrary, that the appraiser complied with his statutory duty with respect to the ascertainment of the quantities of merchandise involved. These he indicated by notations on the entries, and the notation "Dutiable weight," which he is assumed to have made, it seems to us, entered as an element into his findings of value. ·

In other words, as held by the trial court, the appraiser determined the dutiable value to be the "conditioned weight" price applied, however, to the net weight pounds, and the collector simply liquidated in accordance with the regular and usual procedure.

The foregoing cases affirm the proposition that the ascertainment of weight of imported merchandise for classification or other purposes has nothing to do with the matter of "dutiable weight". And needless to say, had

these cases been brought to our attention at the time we were considering our decision in C.D. 3744, we would have been influenced by them in rendering the decision in that case. But in that case counsel for the plaintiff indicated in the brief that the *Pastene* case was the closest case they could find to the facts then before the court after diligent research; and nothing to the contrary was presented by defendant's counsel. But it is now clear to the court that the foregoing cases dealing with the dutiable weight of textile yarns and synthetic fibers are more in point than the *Pastene* case on which the court relied to some extent in reaching its decision in C.D. 3744. And the holding in these cases, particularly the *Downing* case, is that differing returns of weight for imported merchandise may properly co-exist in an entry record without having the effect of impugning an official customs determination of "dutiable weight" —the position taken by the Customs Bureau herein.

Additionally, it is to be noted that the formula for determining the yarn number set forth in headnote 1(b) of Schedule 3, Part 3A, TSUS, like a predecessor treasury department instruction issued to collectors of customs [mentioned in the *Downing* case as T.D. 18337], introduces an element of arbitrariness into the calculation insofar as the weight of the sample fabric is concerned. Headnote 1(b) states:

. . . The weight shall be taken after any excessive sizing is removed by boiling or other suitable process.

As defendant's counsel aptly observes in his brief (page 17) the process of desizing the fabric [for purposes of yarn number determination] would influence the actual weight of the affected cloth. Hence, it would appear that this measure is designed to obtain the weight of the sample cloth in its raw state rather than in the condition in which the cloth is actually imported. And the arbitrary posture manifest in this formula is consistent with the view taken by the Board of General Appraisers in cases involving cotton cloth to the effect that the yarn number determination was intended by Congress to be an "arbitrary" rather than an exact method. See cases cited in Lord & Taylor v. United States, 8 Ct. Cust.App. 345, T.D. 37610 (1918), at page 348.

The situation under TSUS with respect to yarn number determination does not appear to be any different than it was under prior tariff acts. The draftsmen of the headnotes in Schedule 3, Part 3A of TSUS tell us that they intended them to be "clarifying in nature and conform to existing tariff provisions and customs practices with respect to fabrics of cotton." (Tariff Classification Study, Schedule 3, Part 3, page 97). Therefore, bearing in mind the exactitude traditionally demanded in customs practices in the application of standards for determining dutiable weight, the mere "arbitrariness" of the yarn number calculation would appear to be sufficient reason in and of itself to disqualify its resulting product from any use beyond that of duty rate determination. Consequently, in this connection, we find ourselves in agreement with the statements of the circuit court of appeals in *Downing* when it said, "The usage is requisite for the proper classification of the goods, but not necessary or appropriate for ascertaining their quantity. The duty is laid definitely per pound, according to the number . . . If the original condition was to be resorted to as well for weight as for classification, the duty would remain the same upon the advanced goods as upon the raw, and the provisions for differences would be meaningless, instead of effective according to their terms."

In view of all of the foregoing and following the decision of the circuit court of appeals in Downing v. United States, *supra*, the court is now of the opinion that the position taken by the Customs Bureau on the question of dutiable weight as set forth in T.D. 69–148 is correct. Accordingly, the opinion of

this court as expressed in C.D. 3744 is hereby overruled.

We hold that the evidence at bar concerning the laboratory determined weights utilized in the ascertainment of the average yarn numbers for the instant merchandise is not pertinent to the determination of the dutiable weight of said merchandise. And since there is no other evidence in the record before the court bearing upon the question of dutiable weight, plaintiff has failed to rebut the presumption of correctness attaching to the determination of the collector or district director, as the case may be, regarding dutiable weight. In view of this holding we do not consider the evidence adduced by defendant inasmuch as defendant is under no duty to support the collector's or district director's determination at this point. The protests are overruled.

Judgment will be entered herein accordingly.